DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants Tim and Juanita Semelsberger appeal from the judgment of the Summit County Court of Common Pleas, granting summary judgment in favor of appellee Rhonda Baker. We reverse and remand.
 I.
This dispute involves four parcels of property in Akron, Ohio. The first parcel ("the Baker parcel") is landlocked and does not have direct access to a road. The Baker parcel has a house and garage. The second parcel ("the Apartment parcel") has an apartment complex built on it. The third parcel ("the Church parcel") contains the Evangel Temple of the Assembly of God, as well as a large blacktop parking lot. The fourth parcel ("the Semelsberger parcel") fronts Dan Street and has a house and other outbuildings on it. The Baker parcel is bordered by State Route 8 to the west, property owned by the United States government to the north, the Apartment parcel to the east, and the Church parcel to the south. The Semelsberger parcel is bordered by Dan Street on the east, the Apartment parcel on the west, and the Church parcel on the south. There is no contact between the Baker and Semelsberger parcels.
In 1943, the then owners of these four lots recorded three driveway easements (collectively, "the 1943 easement"). The first easement was about fifteen feet wide and ran along the northern property line of the Church parcel. The second easement was also about fifteen feet wide and ran along the southern property line of the Apartment parcel. The third easement was of the same width and ran along the southern line of the Semelsberger parcel. When taken as a whole, the 1943 easement formed a thirty foot corridor that connected the Baker property to Dan Street. With this easement, the Baker parcel now had access to a surface street.
In 1949, the Baker parcel was sold to Gerald and Mabel Brady, who still owned it in 1971. The Bradys used the 1943 easement to access the road from their property. In 1964, the Semelsberger property was purchased by Victor Valataro. An apartment complex was built on the Apartment parcel sometime after 1977. After various conveyances, the Gross Family Trust purchased the Apartment parcel in 1992.
In 1972, appellant Juanita Semelsberger, the niece of Mabel Brady, began renting the Semelsberger parcel from Valataro. Appellant Tim Semelsberger did not yet live there and was not yet Juanita's husband, but he was often present. At about the same time, the Bradys began to use the Apartment parcel to access the Baker parcel. In 1984, after the Semelsbergers became husband and wife, Tim signed an installment land contract with Valataro for the purchase of the Semelsberger parcel.
At some point after 1972, Tim Semelsberger made various improvements to the Semelsberger parcel. A stockade fence and two outbuildings were built on the Semelsberger parcel, blocking the 1943 easement. The parties dispute when the fence was built. It is also unclear whether the Bradys acquiesced in Tim's actions or not. In any event, the Bradys continued to use the Apartment parcel to access the Baker parcel.
In 1991, the Bradys sold the property to Rhonda Roberto, n.k.a. Rhonda Baker. Baker signed a document that purported to inform her that she was required to access the Baker parcel through the Apartment parcel. Thereafter, the Gross Family Trust told Baker she could no longer use the Apartment parcel to access her property. The Gross Family Trust eventually built a fence on the Apartment parcel that blocked the Baker parcel's easement across the Apartment parcel.
On December 8, 1995, Baker filed a complaint in the Summit County Court of Common Pleas. Baker sought declaratory and injunctive relief against the Semelsbergers, the Evangel Temple, the Gross Family Trust, and Valataro, with relation to the 1943 easement. The Semelsbergers answered and counterclaimed.[1]
The Semelsbergers then moved for summary judgment. Baker responded and moved for summary judgment against all defendants. The trial court granted summary judgment to Baker on April 30, 1997. The trial court found that the 1943 easement had not been terminated. The Semelsbergers now appeal to this court.[2]
 II.
The Semelsbergers assert one assignment of error:
 THE TRIAL COURT ERRORED [sic] BY ENTERING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF WHERE THERE REMAINED GENUINE ISSUES OF MATERIAL FACT AND REASONABLE MINDS COULD COME TO MORE THAN ONE CONCLUSION CONCERNING THOSE FACTS.
The Semelsbergers argue that several genuine issues of material fact exist so as to preclude summary judgment in the case at bar. They assert that there are disputed facts as to whether the 1943 easement over the Semelsberger parcel has been either abandoned or terminated by adverse use.
 A. Summary Judgment Standard
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment isde novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. See Henkle v. Henkle
(1991), 75 Ohio App.3d 732, 735.
 B. Extinguishing or Terminating Easements
An easement may be extinguished or terminated by various means. Two of these methods are by abandonment, and by adverse possession. The Semelsbergers argue that they have produced evidentiary materials that create genuine issues of material fact as to whether the 1943 easement has been abandoned or terminated by adverse possession.
1. Adverse possession
"An easement may be extinguished by adverse possession."Szaraz v. Consol. R.R. Corp. (1983), 10 Ohio App.3d 89, 91. "Adverse possession may be established where the possession of the land was open, notorious, exclusive, adverse, hostile, and continuous for more than twenty-one years." Grosjean v. Rehm
(Aug. 21, 1991), Wayne App. Nos. 2611/2613, unreported, at 4. Thus, if the possessor of the servient estate prevents the easement owner from using the easement for twenty-one years by methods that are open, notorious, exclusive, adverse and hostile, the easement is extinguished and title reverts to the owner of the servient estate. The element of adverse possession at issue is whether the Semelsbergers have obstructed the 1943 easement for the required twenty-one year period.
Genuine issues of material fact exist as to whether the Semelsbergers have met the requirements of adverse possession so as to extinguish the 1943 easement. There is some question as to how long the stockade fence constructed by Tim Semelsberger has been in existence. In affidavits, the Semelsbergers stated that the fence has been in place for more than twenty-one years. This contradicts two affidavits, relied on by the trial court, that stated that the fence had been present for less than twenty-one years. The Semelsberger affidavits also contradict the deposition of Mabel Brady, who testified that no fences presently on the Semelsberger parcel existed prior to 1991. This conflict in evidence precludes summary judgment from being granted on this issue.
Baker argues that the Semelsbergers cannot qualify as adverse possessors because they have not been the record owners of the Semelsberger parcel for twenty-one years. Juanita Semelsberger began renting the Semelsberger parcel from Valataro in 1972. Tim Semelsberger is currently under land contract to purchase the property, but title still remains in Valataro. Baker argues that because the Semelsbergers have not been owners, they cannot extinguish the 1943 easement by adverse possession. We disagree.
For purposes of adverse possession, the current possessor of land need not have held title to the land himself or herself for the entire twenty-one year period. "Tacking" of adverse possession is permitted. "It is definitely settled * * * that where there is a privity between successive occupants a continuous and successive possession of all for 21 years will ripen into title. It is equally well settled that the privity between a landlord and tenant brings them within this class of occupants." Powers v.Malavazos (1927), 25 Ohio App. 450, 454. Tacking is also permitted between vendor and vendee. Id. In the case at bar, either Juanita or Tim has been the tenant or the vendee of the Semelsberger parcel since 1972. As such, their possession may be tacked for purposes of determining whether the easement was extinguished by adverse possession for the requisite twenty-one year period.
2. Abandonment
In order for an easement to be extinguished by abandonment, there must be "a voluntary, intentional, and absolute relinquishment or renunciation" of the easement. 36 Ohio Jurisprudence 3d (1982) 492, Easements and Licenses, Section 86. Non-use of the easement alone does not constitute abandonment. "To constitute an abandonment, there must be nonuser [sic] together with an intention to abandon[.]" Id. at 495, Section 88. "An intention to abandon may be inferred where the owner of the easement does, or permits to be done, any act inconsistent with its future enjoyment." Id. at 493, Section 87. However, "a right of way is not extinguished by the habitual use by its owner of another equally convenient way unless there is an intentional abandonment of the former way." Id. at 494, Section 87.
It is undisputed that the 1943 easement has remained unused for a long period of time, and that the Bradys began using the Apartment parcel to access the Baker parcel at approximately the same time as the non-use of the 1943 easement. Such non-use of the easement does not destroy it. However, there are genuine issues of material fact as to whether Baker or the Bradys manifested an intent to abandon the 1943 easement. Mabel Brady testified in her deposition that she gave the Semelsbergers permission to build the outbuildings that obstructed the 1943 easement. Permitting an easement to be obstructed may be evidence of an intent to abandon the easement. See Tudor Boiler Mfg. Co.v. I. E. Greenwald Co. (1904), 26 Ohio C.C. (N.S.) 556, 560-61. However, she also testified that the Semelsbergers offered to build a gate to allow the Bradys to continue to access the Baker parcel by way of the 1943 easement, and that the Semelsbergers occasionally pulled the Bradys' car out when it got stuck in the easement. Thus, a genuine issue of material fact exists as to whether the Bradys intended to abandon the easement.
There is also a factual dispute as to the meaning of a document signed by Baker when she purchased the Baker parcel. The document stated that, by signing, Baker acknowledged that she had no access to Dan Street directly and that she was required to access her property via the Apartment parcel. Baker contends that she never intended to relinquish the 1943 easement by signing the document; the Semelsbergers assert that the document evidences an intention to abandon the 1943 easement. Because there are conflicts on the issue of whether Baker intended to abandon the 1943 easement, summary judgment was inappropriate.
3. Summary
Genuine issues of material fact exist as to whether the 1943 easement was extinguished by adverse possession or by abandonment. Therefore, the trial court erred by granting summary judgment in favor of Baker. The Semelsbergers' assignment of error is sustained.
 III.
The Semelsbergers' assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellee.
 Exceptions. _________________________________ JOHN W. REECE
FOR THE COURT
BAIRD, P. J.
MILLIGAN, J.
CONCUR.
(Milligan, J., retired Judge of the Fifth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)
[1] The Gross Family Trust also answered. Valataro filed an "answer" that asked to be left out of the lawsuit. The Evangel Temple did not answer, and default judgment was granted against it.
[2] None of the other defendants below appealed. Therefore, the decision of the trial court enforcing Baker's right to use the 1943 easement against the Gross Family Trust, Valataro, and Evangel Temple is still in force.